**\*E-Filed: October 15, 2014\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMMIR UMAR,<br><br>        Plaintiff,<br>  v.<br>CRAIG STORLIE,<br><br>        Defendant.<br>_____/ | No. C12-06071 HRL<br><br>**ORDER ON MOTIONS IN LIMINE**<br><br>**[Re: Docket Nos. 49, 50, 51, 55]** |

Plaintiff Ammir Umar filed three motions in limine. Defendant Craig Storlie filed ten. All were discussed at the Pretrial Conference on May 15, 2014. Some were granted, some denied, and a few deferred. The court now issues its formal order on them all.

**Plaintiff's Motions**

1. Exclude Umar's Past Criminal History. Unopposed. GRANT.

2. Exclude Defense "Experts" Ngo and Morales. Since these proposed witnesses, apparently, were not designated as experts, plaintiff argues they cannot testify as experts. The court agrees. However, they probably qualify to give lay opinion testimony under Fed. R. Evid. 701. DENY.

3. Exclude Testimony of "Victim" Greg Burris. Buris, the second victim in this case, purportedly positively identified Umar in the photo lineup as the thief. But, it is undisputed that

Burris made the identification after Storlie submitted his affidavit of probable cause and the judge issued the arrest warrant. Accordingly, his testimony appears to be irrelevant and should be excluded. It would only become relevant if defendant cites persuasive authority for the proposition that an insufficient showing of probable cause at the time of issuance of an arrest warrant can be "cured" by the development of stronger evidence of probable cause prior to service of the arrest warrant, even though that stronger evidence was not shared with the judge who issued the warrant. Absent such authority, GRANT.

**Defendant's Motions**

1. Exclude Factual Innocence Determination and Outcome of Criminal Charges.

There is no dispute that Cal. Penal Code § 851.8(i) expressly prohibits introduction of evidence in this suit of factual innocence. GRANT.

With respect to the outcome of the criminal charges, strong evidence that Umar had an alibi came to light, and the prosecutor dropped the charges. Defendant thinks that the jury should hear nothing about the outcome. Plaintiff argues that the jury should be told that charges were dropped for insufficient evidence. Neither side's position seems right. To say nothing about the outcome would leave the jury guessing and invite speculation. To tell the jury that charges were dropped for lack of evidence could invite it to assume that the probable cause showing must have been inadequate, which is not necessarily so. The court prefers a middle ground, as follows: "After Umar's arrest, further investigation developed additional evidence that led the District Attorney to drop the criminal charges and dismiss the case." DENY in part, as indicated.

2. Exclude Evidence of Damages for Incarceration After District Attorney Filed Criminal Complaint. The D.A. filed the complaint two days after plaintiff was arrested, but he remained in custody another 27 days. There is no disagreement that under California law the filing of the complaint by the D.A. cut off damages for false arrest, and the jury should be so instructed. But,

2

federal law is different. As to plaintiff's 1983 claim, there is a presumption that a prosecutor exercised independent judgment in filing the complaint. Normally, therefore, at that point damages would be cut off. However, if the plaintiff can rebut the presumption, such as—for example—by proving officers presented false information which tainted the prosecutor's judgment, then damages may not be cut off. The issue of the prosecutor's independent judgment is disputed here, and the court intends to submit the issue to the jury by appropriate instructions and verdict form. (If either side feels this is an issue for the court to decide, promptly file a brief with pertinent authorities.) DENY.

      3. Exclude Expert Testimony on Ultimate Issues. Storlie wants to limit plaintiff's expert, Roger Clark, to opining about police practices in general and not offer legal conclusions about Storlie's activities in this case. Umar, on the other hand, citing Fed. R. Evid. 704, argues that expert opinion is not objectionable just because it embraces an ultimate issue. However, the distinction between legal conclusions (not allowed) and ultimate issues (allowed) is a very murky one, and in cases similar to this one courts have reached decisions going all over the map. This court comes out as follows: Clark may testify that defendant's activities did or did not comply with POST standards or generally accepted police practices. He may not mention plaintiff's factual innocence. He may not opine on the presence or absence of probable cause, or on the "reasonableness" of the investigation. He may not comment on Storlie's subjective state of mind or on his credibility (meaning, for example, he may not attribute to Storlie dishonesty, untruthfulness, lying, or engaging in deliberate falsehood). He may not say Umar's constitutional rights were violated. GRANT in part, as described.

      4. Exclude Evidence of Umar's Alibi. Defendant wants no mention of Umar's alibi, namely that he was indisputably at work (because he is on the surveillance camera covering his work station) at the time of one of the charged crimes. The court has already indicated it will exclude

evidence that an alibi was the later-established evidence that caused the prosecution to drop the charges. However, the court will not preclude plaintiff from testifying as to what he told the officers about his whereabouts at the time the crimes were committed when they questioned him prior to applying for the arrest warrant. DENY, as indicated.

5. Exclude Information Which Should Have Been Produced in Discovery But Was Not. GRANT.

6. Exclude Metro PCS Records. Irrelevant to the proximate cause determination. GRANT.

7. Exclude Pictures from Umar's Cell Phone. Irrelevant. GRANT.

8. Exclude Witnesses from Courtroom. Both sides agree. GRANT.

9. Exclude Reference to Settlement Discussions. Both sides agree. GRANT.

10. "Bifurcate" Punitive Damages. The trial will, potentially, be conducted in two phases. Phase one will cover liability and compensatory damages. Evidence of defendant's financial condition may not be introduced. However, if the phase one jury verdict includes a finding that Storlie acted with fraud, oppression, or malice, phase two will immediately commence. Each side may introduce relevant evidence on punitive damages, then argue their respective positions. The jury will be given appropriate instruction and retire to deliberate the single question of the amount, if any, of punitive damages to award. GRANT, on the understanding that a two phase trial is the functional equivalent of a "bifurcation."

**IT IS SO ORDERED.**

Dated: October 15, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C12-06071 HRL** N**otice will be electronically mailed to:**

Christian Bayard Nielsen     CAO.Main@sanjoseca.gov, Chris.Nielsen@sanjoseca.gov

Jaime Alejandro Leanos     jleanoslaw@pacbell.net, florysel-leanos@pacbell.net, vdewanlaw@gmail.com

Nora Valerie Frimann     cao.main@sanjoseca.gov

Shannon Smyth-Mendoza     cao.main@sanjoseca.gov, shannon.smyth-mendoza@sanjoseca.gov

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**